**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION**

| | |
|---|---|
| Mandi Stagl and Heather Burckard, ) | |
| ) | |
| Plaintiffs and ) | |
| Counter Defendants, ) | |
| ) | **ORDER GRANTING PLAINTIFFS'** |
| ) | **MOTION FOR PARTIAL SUMMARY** |
| ) | **JUDGMENT AND DENYING** |
| vs. ) | **DEFENDANTS' MOTION FOR** |
| ) | **HEARING** |
| ) | |
| ) | Case No. 4:11-cv-014 |
| Aisha Vadell, Dawn Verbruggen, and ) | |
| Lorell Seibold d/b/a Beautiful U Day Spa, ) | |
| ) | |
| Defendants and ) | |
| Counter Claimants. ) | |

Before the Court are the plaintiffs' "Motion for Partial Summary Judgment" filed on May 23, 2011, and the defendants' "Request for Oral Arguments" filed on August 31, 2011. See Docket Nos. 27 and 52. The defendants filed a response to the motion on August 31, 2011. See Docket No. 51. The plaintiffs filed a reply on September 14, 2011. See Docket No. 53. The plaintiffs also filed a response to the defendants' request for oral arguments on September 14, 2011. See Docket No. 56. For the reasons set forth below, the Court grants the plaintiffs' motion and denies the defendants' motion for a hearing.

I.   **BACKGROUND**

The Beautiful U Day Spa ("Beautiful U") is located in Minot, North Dakota and is owned by the three individual defendants, Aisha Vadell, Dawn Verbruggen, and Lorell Seibold. See Docket No. 30, p. 19. The Beautiful U provides hair styling, facials, cosmetics, massage, and related

services. The plaintiff, Mandi Stagl, worked as a cosmetologist and manager for the Beautiful U from approximately February 2, 2009 to October 15, 2009. Plaintiff Heather Burckard, worked as a cosmetologist for the Beautiful U from approximately May 27, 2009 to October 15, 2009.

The defendants maintain that the plaintiffs were independent contractors, instead of employees, while they worked at the Beautiful U. However, several government agencies have determined that the plaintiffs were in fact employees. The North Dakota Department of Labor, North Dakota Workers Safety and Insurance ("WSI"), the United States Department of Labor, and the United States Internal Revenue Service ("IRS") each found that Mandi Stagl was an employee and not an independent contractor. See Docket Nos. 30, pp. 110-111; 30-9; 30-11; 30-15; and 46-1. Heather Burckard was found to be an employee by the North Dakota Department of Labor, WSI, and the IRS. See Docket Nos. 29-1; 30, pp. 110-111; and 49-3.

On February 2, 2011, the plaintiffs filed a complaint in federal court. See Docket No. 1. They contend the defendants failed to compensate them adequately under the Federal Labor Standards Act ("FLSA") and the Social Security Act ("SSA"). The plaintiffs filed a motion for partial summary judgment on May 23, 2011. See Docket No. 27. In that motion the plaintiffs contend there is no material issue of fact as to their status as employees and their right to minimum wage and overtime compensation under the FLSA. The defendants filed a response on August 31, 2011. See Docket No. 51.

## II. STANDARD OF REIVEW

Summary judgment is appropriate when, looking at the evidence in light most favorable to the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law. Bennet v. Nucor Corp., 656 F.3d 802, 817 (8th Cir. 2011); Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. Id.

### III.    LEGAL DISCUSSION

The parties dispute which standard should be used to determine whether the plaintiffs were employees or independent contractors. The plaintiffs contend that the "economic realities" test applies in determining whether an individual is considered to be an employee or an independent contractor under the FLSA. This test requires that the court examine the "circumstances of the whole activity" and consider whether, as a matter of economic reality, the individuals are dependent upon the business to which they render services. The defendants argue the common law test should be applied which considers twenty (20) criteria developed from traditional master-servant agency principals to determine whether an individual is an employee or independent contractor.

The Federal Labor Standards Act ("FLSA") provides little guidance as to the limits of the employer-employee relationship. Marshall v. Truman Arnold Dist. Co., Inc., 640 F.2d 906, 908 (8th Cir. 1981) (citing Rutherford Food Corp. v. McComb, 331 U.S. 722, 728 (1947)). However, the FLSA broadly defines an "employee" as "any individual employed by an employer" with few exceptions. 29 U.S.C. § 203(e)(1). The term "'[e]mployer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). "Employ" under the FLSA "includes to suffer or permit to work." 29 U.S.C. § 203(g).

Since 1947 the United State Supreme Court has construed the broad definitions found in the FLSA "to require its application to many persons and working relationships, which prior to this Act, were not deemed to fall within an employer-employee category." Rutherford Food, 331 U.S. at 729 (quoting Walling v. Portland Terminal Co., 330 U.S. 148, 150 (1947)). The "economic reality" test was essentially adopted by the Supreme Court in 1947 in a case entitled United States v. Silk, 331 U.S. 704 (1947) and affirmed in Rutherford Food that same year.[1] The Supreme Court specifically noted that the FLSA defines the term "employ" to mean "suffer or permit to work" which has a "striking breadth [that] . . . stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles." Nationwide Mutual Insurance v. Darden, 503 U.S. 318, 326 (1992) (citing Rutherford Food, 311 U.S. at 728). Despite revisiting the definitions contained in the FLSA multiple times since Rutherford Food, Congress has not amended the FLSA to contradict the United States Supreme Court's broad "economic reality" interpretation of who is considered to be an employee under the Act. Donovan v. Agnew, 712 F.2d 1509, 1514 (1st Cir. 1983); cf., Darden, 503 U.S. at 324-25 (noting that Congress amended the NLRA and the SSA after the Supreme Court interpreted the term "employee" to be distinct from the common law meaning). The Supreme Court has explained that the analysis as to whether a worker is an employee "does not depend on . . . isolated factors but rather upon the circumstances of the whole activity." Rutherford Food, 331 U.S. at 730.

The Eighth Circuit Court of Appeals has adopted the Supreme Court's interpretation that "[t]he determination of the relationship depends 'upon the circumstances of the whole activity.'" Marshall, 640 F.2d at 908. The "economic reality" test has been endorsed by the Eighth Circuit,

---

[1] Although the Supreme Court subsequently overruled Silk, it re-affirmed Rutherford Food. Nationwide Mutual Insurance v. Darden, 503 U.S. 318, 326 (1992).

and several district courts within the Circuit, in a number of FLSA cases. See <u>Fruco Constr. Co. v. McCelland</u>, 192 F.2d 241, 244 (8th Cir. 1951) (quoting <u>Bartels v. Birmingham Collector</u>, 332 U.S. 126, 130 (1947)) ("Obviously control is characteristically associated with the employer-employee relationship but in the application of social legislation employees are those who as a matter of <u>economic reality</u> are dependent upon the business to which they render service.") (emphasis added); <u>Donovan v. Tony and Susan Alamo Foundation</u>, 722 F.2d 397, 400 (8th Cir. 1983); <u>Blair v. Wills</u>, 420 F.3d 823, 829 (8th Cir. 2005) ("In determining whether an entity functions as an individual's employer courts generally look to the <u>economic reality</u> of the arrangement.") (emphasis added); <u>Saunders v. Ace Mortgage Funding, Inc.</u>, 2007 WL 4165294 (D. Minn. 2007) ("Because the FLSA defines employer in such broad terms, it offers little guidance on whether a given individual is or is not an employee. In answering that question, the overarching concern is whether the alleged employer possessed the power to control the workers in question with an eye to the '<u>economic reality</u>' presented by the facts of each case.") (emphasis added).

Courts have utilized several non-dispositive factors to determine whether an individual is an employee or an independent contractor under the FLSA which include (1) whether the alleged employee has a right of control the manner in which the work is performed; (2) whether the worker performed integral tasks of the business; (3) whether the worker has a special skill, instead of merely providing labor or services; (4) whether the worker has a risk of profit or loss; (5) whether the worker has invested in the equipment required for the work, or has employed helpers; and (6) the degree of permanence of the working relationship. E.g., <u>Donovan v. Sureway Cleaners</u>, 656 F.2d 1368, 1370 (9th Cir. 1981); <u>Marshall</u>, 640 F.2d at 608-09; <u>Hodgson v. Taylor</u>, 439 F.2d 288, 290

(8th Cir. 1971). Whether the employer labels an individual as an independent contractor is not conclusive. Taylor, 439 F.2d at 290 (citing Rutherford Food, 331 U.S. at 729).

The record reveals that the Beautiful U Day Spa ("Beautiful U") was typically open from 10:00 a.m. to 5:00 p.m. on weekdays, and 10:00 a.m. to 3:00 p.m. on weekends. The defendants expected the plaintiffs to work during the regular business hours. See Docket No. 30, pp. 55-56. Establishing set hours is indicative of control. Aisha Vadell testified that the plaintiffs were an integral part of the operation at the Beautiful U. See Docket No. 30, pp. 66, 103. The plaintiffs were required to personally perform all the services for the Beautiful U on its premises. See Docket No. 31-16, pp. 2-3. For much of the pertinent time, the plaintiffs held their cosmetologist license at the Beautiful U and could only work at the Beautiful U. See Docket No. 31-16, p. 2. In June 2009, Mandi Stagl obtained a "Manager Operator" cosmetology license which would permit her to offer services independent of the Beautiful U, but there is no evidence that she worked for any other spa, or advertised her services to the general public separate from the Beautiful U. See Docket No. 30-14. The working relationship between the plaintiffs and the Beautiful U was ongoing and was not for any set period of time. See Docket No. 30, p. 103. The record reveals that the defendants had the right to terminate the plaintiffs with two weeks notice without incurring liability. See Docket No. 30-5. These factors support a finding that the plaintiffs were employees.

Neither of the plaintiffs had any significant investment or ownership interest in the Beautiful U. See Docket No. 30-16, p. 3. The plaintiffs provided their own hair dryer, flat iron, and scissors while they worked at the spa. See Docket No. 30-16, p. 3. However, the defendants provided a workstation, along with equipment and hair styling supplies, and also provided cosmetic products. See Docket Nos. 30, pp. 74-75 and 30-16, p. 3. The plaintiffs did not have an expectation of profit

or loss because they had no capital investment in the Beautiful U. These factors tend to support a finding that the plaintiffs were employees of the spa.

The record also reveals that the plaintiffs generally received 50% commission on services they provided and 10% of the retail sales. Commission-based compensation generally indicates an independent contractor status. However, the defendants exercised control over the plaintiffs' compensation as an employer would when they required the plaintiffs to "[h]onor discount specials" for "friends and family" and radio advertisements. See Docket Nos. 30, p. 61-63 and 30-5.

The plaintiffs' motion for partial summary judgment only concerns the employment relationship between the plaintiffs and the Beautiful U for purposes of the Fair Labor Standards Act. The United States Supreme Court and the Eighth Circuit Court of Appeals have interpreted the term "employee" broadly under the FLSA. This Court has examined the "circumstances of the whole activity" surrounding the working relationship of the parties and finds there are no material issues of fact as to the nature of the working relationship under the FLSA. The Court finds as a matter of law that the plaintiffs were employees of the Beautiful U rather than independent contractors for purposes of the FLSA. As a result, partial summary judgment is granted as to the plaintiffs' employment status under the FLSA, and the defendants' request for oral arguments is denied.

### III.  CONCLUSION

The Court has carefully and thoroughly examined the parties' arguments, relevant case law, and the entire record. The Court finds that there are no genuine issues of material fact as to the employment status of the plaintiffs under the Fair Labor Standard Act. The plaintiffs worked full-time on the premises of the Beautiful U and nowhere else. The services they performed were an

integral part of the salon's business and they were obligated to personally perform those services. They neither hired nor paid any assistants to help perform their job functions. Their tools and supplies were largely furnished by the Beautiful U. They had no significant investment in the business and had no opportunity to profit, nor were they at any risk for loss. They did not make their services available to the general public. The Beautiful U Day Spa had the right to terminate their services on 14-day notice. In addition, based on their own independent investigation of the facts and the plaintiffs' employment status, several state and federal government agencies concluded that the plaintiffs were employees of the Beautiful U Day Spa in 2009. The Court **GRANTS** the plaintiffs' "Motion for Partial Summary Judgment" (Docket No. 27) and **DENIES** the defendants' "Request for Oral Arguments" (Docket No. 52).

**IT IS SO ORDERED**.

Dated this 15th day of November, 2011.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court